**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

Plaintiff,

v.

**DURAND SINCLAIR**

Defendant.
_______________________________________/

**Case No. 13-CR-20829**
**Honorable Denise Page Hood**
**U.S. District Court Judge**

**ORDER DENYING MOTION TO SUPPRESS AND SETTING TRIAL DATE**

## I. INTRODUCTION

This matter is before the Court on Defendant Durand Sinclair's Motion to Suppress. The Government opposes the motion. Response and reply briefs have been filed.

On October 17, 2013, a Complaint was filed against Defendant Durand Sinclair charging him one count of Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1) & 841(a)(1). On November 12, 2013, the grand jury returned a one-count indictment charging Defendant with Felon in Possession of a Firearm. Defendant is currently detained pending trial. The Court entered an Order denying Defendant's Motion for Revocation of Detention Order on December 24, 2013. (Doc. No. 19)

On April 3, 2013, a search warrant was issued by a state court judge and

executed at a home on Snowden in the City of Detroit, Michigan. A shotgun and ammunition were found in a bedroom closet, along with Defendant's identification and clothing. The affidavit with the Complaint asserts that Task Force Agents and Officers had been investigating Defendant since August 2008 and he has been under surveillance for narcotics trafficking.

## II. ANALYSIS

### A. Motion to Suppress Evidence Pursuant to Search Warrant

#### 1. Affidavit and Search Warrant

Defendant seeks to suppress the items obtained after the search warrant was executed claiming that the search warrant was invalid and was not supported by probable cause or articulable suspicion. Defendant argues that the affidavit in support of the search warrant did not contain the appropriate facts and information to show that any criminal activity occurred at the Snowden address.

Generally, the Fourth Amendment of the United States Constitution requires officers to obtain a warrant prior to conducting a search. *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007). "A warrant will be upheld if the affidavit provides a 'substantial basis' for the issuing magistrate to believe 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id.* at 652 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The probable cause standard

is a "practical, non-technical conception" that leads with the "factual and practical considerations of everyday life." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005)(quoting *Gates*, 42 U.S. at 231). "Courts should review the sufficiency of the affidavit in a commonsense, rather than hyper technical manner." *United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001). "[R]eview of an affidavit and search warrant should rely on a 'totality of the circumstances' determination, rather than a line-by-line scrutiny." *Id.* A magistrate judge's determination of probable cause should be paid great deference by a reviewing court. *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000)(en banc). A court's review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four-corners of the affidavit and the court cannot consider any other testimony. *Frazier*, 423 F.3d at 531. "To justify a search, the circumstances must indicate why evidence of illegal activity will be found 'in a particular place.' There must, in other words, be a 'nexus between the place to be searched and the evidence sought.'" *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004).

If an affidavit is found to be defective, the Supreme Court has held that the exclusionary rule be modified, "so as not to bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *United States v. Leon*, 468 U.S. 897, 905 (1984). Searches pursuant to a

warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer acted in good faith in conducting the search. *Id.* at 922. The good faith inquiry is to be made objectively and the following exceptions to the good faith inquiry may be considered: 1) the supporting affidavit contained knowing or reckless falsity; 2) the issuing magistrate wholly abandoned his or her judicial role; 3) the affidavit is so lacking in probable cause to render official belief in its existence entirely unreasonable; or 4) the officer's reliance on the warrant was neither in good faith nor objectively reasonable. *Id*. at 923.

A defendant challenging the validity of an affidavit supporting a search warrant has a substantial burden to overcome before an evidentiary hearing is required. *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978). Allegations of negligence or innocent mistake are insufficient. *Id.* There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof and must point out specifically the portion of the warrant affidavit that is claimed to be false. *Id.*

Defendant argues that the affidavit fails to support probable cause to believe that there was any drug activity at the Snowden address and that the affidavit is bare bones and boilerplate. Defendant argues that the good faith exception does not apply

in this case since the affidavit was bare bones. Defendant does not assert that there was deliberate falsehood in the affidavit.

Viewing the four corners of the affidavits supporting the search warrant in the totality of the circumstances, the Court must first determine whether there is a nexus between the place to be searched and the evidence sought. As argued by Defendant, status as a drug dealer, standing alone, does not give rise to a fair probability that drugs will be found in a defendant's home. *Frazier*, 423 F.3d 533. However, status as a drug dealer, plus the observation of drug activity in other places is sufficient to establish probable cause to search the home. *Id.* at 532-33; *United States v. Miggins*, 302 F.3d 384, 393-94 (6th Cir. 2002)(reversing the district court's finding of insufficient nexus between two locations and citing collection of cases from other circuits that observations of drug trafficking occurring away from the dealer's residence provided probable cause for search of a dealer's home); *United States v. Berry*, 565 F.3d 332, 339 (6th Cir. 2009)(the affidavit showed sufficient nexus to the defendant's home even if no illegal drug activity was observed given that he was a known drug dealer from a prior conviction and his car was parked on premises where known drug activity has been found).

The affidavit by Detective Richard Cooper, a Highland Park Police Officer assigned to the FBI Violent Crime Task Force, asserts that he has seven years of

police experience. He asserts that on March 4, 2012, he received information from a confidential source (CS) regarding a drug distribution organization operating in Highland Park, Michigan. The CS indicated he/she has been purchasing heroin from an individual referred to as "Durand," for several years. After calling Durand on a cellular telephone, the CS was then directed to a location on 27 Pasadena in the City of Highland Park, Michigan to purchase the narcotics. The CS and other buyers after ringing the buzzer or knocking on the window of the lower west residence on Pasadena, were then allowed to enter the residence. The CS identified the resident at the Pasadena address as "Hustle", identified as Cecil Williams, who has been identified as working for Durand Sinclair as a "look out" for law enforcement. The CS indicated that the resident of the upper east flat, known as "Garfield," also conducts narcotic sales with Durand Sinclair in the upper west flat.

Durand Sinclair is known to law enforcement as a drug trafficker. In August 2008, the FBI Violent Gang Task Force concluded an investigation on Durand Sinclair at 48 Pasadena, Highland Park, Michigan resulting in a conviction of violation of controlled substance, delivery/manufacture of cocaine and felony firearm. Since then, the Task Force has conducted surveillance on 27 Pasadena in July, August, September, October and November 2012, noting activity consistent with illegal narcotic sales. Numerous times, the Task Force had observed Durand Sinclair parked

in front of 27 Pasadena and later entering the location. The Task Force observed Durand Sinclair in front of his residence at 17558 Snowden in Detroit, Michigan on November 16, 2012 and March 5, 2013. The Task Force observed Sinclair leaving the Snowden address and going to the Pasadena address on both occasions.

On March 28, 2013, further surveillance was conducted on both the Snowden and Pasadena residences beginning at 8:00 a.m. At 3:55 p.m., Sinclair arrived at the Snowden address in a white Chevrolet van and entered the residence. At 6:10 p.m., the white Chevrolet van was observed parked on Pasadena. Officers observed 11 people arrive either on foot or in the vehicles at the Pasadena address, staying between one to five minutes. Several police reports were noted in the affidavit that officers made contact with individuals after they were observed coming from the Pasadena address. After searching these individuals, various narcotics and narcotic paraphernalia were found on their persons or in their cars.

The state court judge issued the search warrant on April 2, 2013 after reviewing Detective Cooper's affidavit.

Based on the affidavit, the totality of the circumstances suggests sufficient evidence of a nexus between the Pasadena and Snowden addresses and that evidence resulting from drug activity at the Pasadena address be found at the Snowden address. Sinclair was observed at the Pasadena address on a number of occasions. Sinclair was

followed from the Snowden address to the Pasadena address. Sinclair is a known drug dealer, and given the other surveillance observations noted above and the CS's information to the officers, the affidavit established "a fair probability that contraband or evidence of a [drug] crime" would be found at Sinclair's residence on Snowden. *Gates,* 462 U.S. at 238.

Given that Sinclair does not allege any deliberate falsehood or of reckless disregard for the truth as to the affidavit, has not accompanied such allegation by an offer of proof, and has not pointed to a specific the portion of the warrant affidavit that is claimed to be false, there is no requirement to hold an evidentiary hearing under *Franks*.

**2. Staleness**

Sinclair argues that the search warrant and affidavit was stale because it was altered from a March 19, 2013 date to April 2, 2013. Sinclair raised this argument for the first time in his reply brief.[1]

The standard of review for a staleness determination is the same standard for determining the sufficiency of an affidavit, whether under the totality of the

[1] New arguments are waived when raised for the first time in a reply brief and the court need not consider these issues. *See Kuhn v. Washtenaw County,* 709 F.3d 612, 623 (6th Cir. 2013); *Frank v. U.S. Food and Drug Admin.,* 2014 WL 718476 *4 (E.D. Mich. 2014).

circumstances probable cause exists to issue a warrant. *United States v. Greene*, 250 F.3d 471, 480 (6th Cir. 2011). Stale information cannot be used in a probable cause determination. *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998). The staleness inquiry depends on the "inherent nature of the crime." *Id.* The following factors are considered to determine if the information is stale: 1) the character of the crime (chance encounter in the night or regenerating conspiracy); 2) the criminal (nomadic or entrenched); 3) the thing to be seized (perishable and easily transferrable or of enduring utility to its holder); and, 4) the place to be searched (mere criminal forum of convenience or secure operational base). *Id.* Evidence of ongoing criminal activity will defeat a claim of staleness. *Greene*, 250 F.3d at 481.

As to the character of the crime, Sinclair is charged with being a felon in possession of a firearm and was under surveillance for drug trafficking. Defendant is not nomadic and is entrenched in the Detroit area. The things to be seized on the warrant include narcotics, proceeds of narcotic sales, firearms and other controlled substances. Other than the drugs, these items are not perishable. As to the place to be searched, Defendant's residence, this could be considered a secure operational base since it is where he resides and where he goes home to everyday. The affidavit set forth the history of the ongoing criminal investigation involving the Pasadena address and those involved in the activity. Defendant's argument that the warrant was stale

since the date was crossed out is without merit since the actual date the affidavit was signed by the judge was April 2, 2013. Defendant has not shown staleness.

### 3. Failure to File Warrant with the State Court

Defendant claims that the warrant is invalid since it was not filed with the 30th District Court. As with the staleness argument, this was raised in his reply brief for the first time. Defendant did not cite to any state law, procedures or cases which would make an unfiled warrant invalid.

## III. CONCLUSION

IT IS ORDERED that Defendant Durand Sinclair's Motion to Suppress (Docket #21) is DENIED. Trial is set for June 25, 2014 at 9:00 a.m.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: June 13, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 13, 2014, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager